```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF OREGON

TSUN KIT MAN,                    )    CV 08-15-PA
                                 )
               Petitioner,       )    FINDINGS OF FACT AND
                                 )    CONCLUSIONS OF LAW
     v.                          )
                                 )
MARIZEL SANTOS CUMMINGS,         )
                                 )
               Respondent.       )
```

**PANNER, Judge.**

Petitioner Tsun Kit Man ("Father") brings this petition under The Convention on the Civil Aspects of International Child Abduction, done at the Hague on 25 Oct. 1980 ("The Convention"), and the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq., which implements The Convention in the United States.

Father alleges that Respondent Marizel Cummings ("Mother") has wrongly retained their minor daughter, referred to herein as "KYM," following a visit to the United States. The Petition asks that KYM be returned to Hong Kong, which is alleged to be her Place of Habitual Residence.

The Petition was filed on January 2, 2008. On January 8, 2008, the court ordered Mother to appear and show cause why the Petition should not be granted. Mother filed an Answer and

Page 1 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

Affirmative Defenses.  The parties, through their very capable counsel, cooperated in preparing this matter for a prompt hearing.  On March 4 and 5, 2008, the court conducted a bench trial, receiving evidence and hearing arguments.  The court also spoke with KYM *in camera*.

These are my Findings of Fact and Conclusions of Law. Fed. R. Civ. P. 52(a)(1) (Dec. 1, 2007).  Certain mixed issues of law and fact are included within the factual findings section.

### **Findings of Fact**

1.   Father and Mother divorced in 2004.  KYM is the sole child of the marriage.

2.   At all relevant times, including the period from July 19, 2007 through March 5, 2008, Father had custody of KYM, under an order of the District Court of The Hong Kong Special Administrative Region dated July 27, 2004.

3.   On July 19, 2007, Father and KYM were residing in Hong Kong, their longstanding place of residence.

4.   By July 19, 2007, Mother had remarried and was residing in the United States with her present husband.  Although they resided in different countries, Mother and KYM still spoke often by telephone, usually at least once a day.

5.   On or about July 19, 2007, KYM traveled to the United States to visit Mother.  Both parents agreed to this visit, which was to last until approximately August 3, 2007.  The parents agreed KYM would return to Father in Hong Kong after this visit.

6.   By agreement of the parties, the date of KYM's return to Hong Kong was extended for one week.

7.  On or about August 11, 2007, following expiration of the extended visitation time, Mother did not return KYM to Father in Hong Kong.  Instead, Mother kept KYM in the State of Oregon, United States, over Father's objections.

8.  During the period from July 19, 2007, through January 2, 2008, KYM was age twelve.  At the time of the hearing on March 4-5, 2008, KYM was age thirteen.

9.  The Court had a very good discussion with KYM on the record in camera.

10.  There has been a very good relationship between KYM and Father.  KYM has a real affection for her father. She wants to maintain contact with him.  Their circumstances and living conditions, though difficult because of the economic situation, are not that much different from many families in Hong Kong.

11.  Father has done an excellent job considering the economic situation, of attempting to care for KYM to the best of his ability. It may be that he still will have an important role in her life. KYM continues to need the influence of her father in her life.

12.  Returning KYM to Father in Hong Kong would not expose KYM to a grave risk of psychological or physical harm, nor place KYM in an intolerable situation.

13.  KYM's present desire is to remain in the United States with Mother.

14.  When KYM traveled to the United States in July 2007, she intended to return to Hong Kong following the visit.  It was only at the conclusion of her visit that KYM decided she wanted to remain in the United States, at this time.

15. There is no evidence that Mother has exerted undue influence upon KYM to remain in the United States.

16. A 13-year-old child here in the United States, with the educational opportunities that are available as distinguished from her situation in Hong Kong, understandably might want to remain here.

17. That Mother and KYM conversed daily by telephone, even while KYM was still residing in Hong Kong, affects KYM's attitude about being with her mother.

18. The court was impressed by the testimony of both parents. Their primary concern is the welfare of KYM. They have different views of what is best for her at this time, but they clearly have the best interests of their daughter, and her future, in mind.

19. The report of psychologist Eric Morrell, PhD, is extremely thorough.

20. The report states that minors at various ages have various stages of maturity.

21. KYM, barely turning 13 during the pendency of the case, is at a comparatively low stage of maturity.

22. Based on Dr. Morrell's report, the Court's *in camera* conversation with KYM, and the court's determination that KYM is not being subjected to undue influence by either parent, the court is satisfied that KYM presently has sufficient maturity to decide whether to remain in the United States with her mother, or to return to Hong Kong with her father.

/ / / /

/ / / /

23. Young girls need their mother, but they also get very mad at their mother at times. KYM may suddenly decide she wants to go back to Hong Kong if she remains here.

24. On the other hand, if KYM is returned to Hong Kong, she would desperately want to come back to the United States, based on what she has told the court, and might resent her father for forcing her to return to Hong Kong.

25. KYM has thought it out carefully and without pressure has decided she wants to stay here with her mother. That will be the order of the court.

26. Neither party is deemed a "winner" in this case. It is a very difficult case.

## Conclusions of Law

1. The Convention seeks to return children (under age 16) to their country of habitual residence for resolution of any custody dispute, and to avoid international forum-shopping. See England v. England, 234 F.3d 268, 271 (5th Cir. 2000); Lalo v. Malca, 318 F. Supp. 2d 1152, 1154 (S. D. Fla. 2004); Journe v. Journe, 911 F. Supp. 43, 46 (D. P.R. 1995).

2. The Convention establishes a very strong presumption in favor of returning the child to the country of habitual residence. This is not the time to decide which is the better parent or more deserving of custody. Blondin v. Dubois, 189 F.3d 240, 246 (2d Cir. 1999). Any custody disputes or concerns should be resolved in the courts of the home country. Friedrich v. Friedrich, 983 F.2d 1396, 1403 (6th Cir. 1993); Journe, 911 F. Supp. at 46.

3.   There are five grounds on which a court may decline to order return.  These exceptions are narrowly applied, in favor of returning the child to the country of habitual residence.  <u>Rydder v. Rydder</u>, 49 F.3d 369, 372 (8th Cir. 1995).

4.   At all relevant times, KYM was a child under age 16, who was habitually resident in a Contracting State (Hong Kong) immediately before any breach of custody or access rights, per Article 4 of The Convention.

5.   On or about August 11, 2007 Mother wrongfully retained KYM, within the meaning of the Convention, in Oregon, United States of America.

6.   Article 13(b) of The Convention grants the court discretion to deny a petition for return of a child if clear and convincing evidence establishes there is a grave risk that return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

7.   The United States State Department offers the following guidance on applying this exception:

> **(c) Grave risk of harm/intolerable situation**.   Under Article 13(b), a court in its discretion need not order a child returned if there is a grave risk that return would expose the child to physical harm or otherwise place the child in an intolerable situation.
>
> This provision was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests.  Only evidence directly establishing the existence of a grave risk that would expose the child to physical or emotional harm or otherwise place the child in an intolerable situation is material to the court's determination.  The person opposing the child's return must show that the risk to the child is grave, not merely serious.

Page 6 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

> A review of deliberations on the Convention reveals that "intolerable situation" was not intended to encompass return to a home where money is in short supply, or where educational or other opportunities are more limited than in the requested State. An example of an "intolerable situation" is one in which a custodial parent sexually abuses the child. If the other parent removes or retains the child to safeguard it against further victimization, and the abusive parent then petitions for the child's return under the Convention, the court may deny the petition. Such action would protect the child from being returned to an "intolerable situation" and subjected to a grave risk of psychological harm.

51 Fed. Reg. 10494, 10510 (March 26, 1986).

    8. The "grave risk" defense must be proven by clear and convincing evidence. 42 U.S.C. § 11603(e)(2)(A). "The exception for grave harm to the child is not a license . . . to speculate on where the child would be happiest." Gaudin v. Remis, 415 F.3d 1028, 1035 (9th Cir. 2005) (quoting Friedrich v. Friedrich, 78 F.3d 1060, 1068 (6th Cir. 1996)).

    9. Article 13 of The Convention gives a court discretion to deny a petition for return of a child if the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of the child's views.

    10. The preponderance of the evidence standard applies to the child's preference exception. 42 U.S.C. § 11603(e)(2)(B).

    11. The Convention text and case law do not provide express guidance for application of the child's preference exception. The results reached in published decisions seem to vary considerably, even among children in a similar age group. Cf. Locicero v. Lurashi, 321 F. Supp. 2d 295, 298 (D. P.R. 2004)

(13-year old boy's desire to remain with father, because he "has good grades, has friends and enjoys sports activities and outings" did not warrant refusal to return child to Argentina) and England, 234 F.3d at 272 (13-year old girl's preference to live with her mother in the United States, rather than with her father in Australia, did not justify refusing to return her to Australia; the "child objection defense" must be narrowly construed) with de Silva v. Pitts, 481 F.3d 1279 (10th Cir. 2007) (not abuse of discretion to allow 13-year old boy to remain with father in Oklahoma instead of returning to mother in Canada; child said he had friends in Oklahoma and was on the football and wrestling teams, he felt the school was better than the one he attended in Canada, and there was no showing that he was improperly swayed by his father) and McManus v. McManus, 354 F. Supp. 2d 62 (D. Mass. 2005) (allowing 14-year-old boys to remain with father in United States, instead of mother in Northern Island, given age, maturity, apparent appreciation for implications of expressed desire, and apparent lack of coaching).

    12.  The United States State Department offers the following guidance regarding application of this exception to the obligation, under The Convention, to return a child to the country of habitual residence:

> **(d) Child's preference.** The third, unlettered paragraph of Article 13 permits the court to decline to order the child returned if the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of the child's views. As with the other Article 13 exceptions to the return obligation, the application of this exception is not mandatory. This discretionery aspect of Article 13 is especially important because of

>the potential for brainwashing of the child by the alleged abductor. A child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child.

51 Fed. Reg. 10494, 10510 (March 26, 1986).

## Conclusion

Pursuant to the third, unlettered paragraph of Article 13 of The Convention, the court declines to order that KYM be returned to Hong Kong. KYM presently objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of her views.

Therefore, Father's Petition for an order returning KYM to Hong Kong is denied.

IT IS SO ORDERED.

DATED this 21st day of March, 2008.

/s/ Owen M. Panner

_____
OWEN M. PANNER
UNITED STATES DISTRICT JUDGE